FOR PUBLICATION



FILED
FEB 15 2017
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

In re:

Tim Wilkins and Cherie Wilkins

    Debtors.

Case No. 16-11025-A-13

MHM-3

## MEMORANDUM

Case 16-11025    Filed 02/15/17    Doc 179

Appearances:
        Sarah Velasco for the chapter 13 trustee, Michael H. Meyer.

        Peter L. Fear for the debtors, Tim Wilkins and Cherie Wilkins.

When calculating a chapter 13[1] debtor's total unsecured debt for eligibility purposes under § 109(e) of the Bankruptcy Code, should the court include the unsecured portions of undersecured automobile claims? When a court lacks sufficient certainty as to whether such claims may be bifurcated under § 506(a) because of § 1325(a)'s hanging paragraph, then the answer is no.

## I. FACTS

The parties do not dispute the material facts. Chapter 13 debtors Tim M. Wilkins and Cherie R. Wilkins operate several businesses according to their Statement of Financial Affairs (the "SOFA"). These businesses include Sleep Sensations, Inc., and TCJJ, Inc.

Schedule E/F contains priority unsecured claims and general unsecured claims totaling $332,707. The debtors list four secured claims on Schedule D (the "Secured Claims"). Three of the Secured Claims have motor vehicles as collateral. On their face, each of the Secured Claims appears to have an undersecured component, and they are described more particularly as follows:

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1-86.

(1) A claim held by BMW Financial Services for $69,200 secured by a 2014 BMW X5 XDrive 50i ("2014 BMW"). The collateral shows a value of $47,575.  Schedule D, Line 2.6, ECF No. 10.

(2) A claim held by EECU for $34,251.68 secured by a 2013 Ford F-150 FX4/King Ranch/Lariat ("Ford F150"). The collateral shows a value of $18,261. Schedule D, Line 2.8.

(3) A claim held by TD Auto Finance LLC for $36,124 secured by a 2015 BMW 4-Series 428i ("2015 BMW"). The collateral shows a value of $33,371. Schedule D, Line 2.15.

(4) A claim held by Serta for $57,018.76 secured by floor model mattresses and box springs (inventory). The collateral shows a value of $23,000. Schedule D, Line 2.14.

Based on the petition date of March 28, 2016, the date that is 910 days before the petition is September 30, 2013. See 11 U.S.C. § 1325(a) (hanging paragraph). And Schedule D represents that the debt for each of these vehicles was incurred in either 2014 or 2015, dates that are within the 910-day period of § 1325(a)'s hanging paragraph.

In the present motion, the trustee moves to dismiss this case on the grounds that the debtors are not eligible for chapter 13 relief under § 109(e).[2] The unsecured debt shown on Schedule E/F totals

---

[2] In December 2016, creditor Madonna Plaza, SRT, LP had argued at the confirmation hearing, *inter alia*, that the debtors were ineligible for chapter 13 relief, and the court denied confirmation. Civ. Min. Order Denying Confirmation, Dec. 2, 2016, ECF No. 166. Eligibility was a contested issue at that hearing. In denying confirmation, the court considered the originally filed schedules and ruled that the debtors plan could not be confirmed given the debtors'

3

$332,707. After adding the unsecured portion of each of the Secured Claims, aggregating $74,387.44, the total unsecured debt equals $407,094.44, which exceeds the unsecured debt limit under § 109(e).

## II.    JURISDICTION

This court has jurisdiction. See 28 U.S.C. §§ 1334, 157(a), (b)(1); General Order No. 182 of the U.S. District Court for the Eastern District of California. This is a core proceeding in which this court may enter final orders. See 28 U.S.C. § 157(b)(2)(A), (O).

## III.   DISCUSSION

### A.   Standards

Section 109(e) contains the eligibility standards for individuals seeking chapter 13 relief under the Bankruptcy Code. 11 U.S.C. § 109(e). For an individual and such individual's spouse to qualify, they must (1) have "regular income," and (2) "owe, on the date of the filing of the petition, noncontingent, liquidated,

---

ineligibility for chapter 13 relief under § 109(e). The court included in its analysis the undersecured portion ($34,018.76) of Serta's claim and undersecured portion ($21,625.00) of BMW Financial Services's claim. Adding the undersecured portions of these two claims to the total unsecured claims on Schedules E/F, the court concluded that the total unsecured debt was $388,350.76, which exceeded the then-applicable debt limit of $383,175.

The court recognizes that the trustee's motion may have been brought in part because of the court's earlier position at the confirmation hearing that the debtors had exceeded the eligibility limits of § 109(e). The court's position in this contested matter, however, has changed after a closer reading of the applicable case law.

4

unsecured debts that aggregate less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525."[3] *Id.*

The Ninth Circuit has "simply and explicitly state[d] the rule for determining Chapter 13 eligibility under § 109(e) to be that eligibility should normally be determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith." *In re Scovis*, 249 F.3d 975, 982 (9th Cir. 2001).

However, despite the fact that a claim based on a judgment lien might not have been scheduled as unsecured on Schedule F, the Ninth Circuit in *Scovis* applied a § 506(a) analysis to determine whether the judgment lien debt was secured or unsecured and to ensure that form was not elevated over substance in determining whether a claim was secured or unsecured. The court summarized the majority view on whether to apply a § 506(a) analysis in the eligibility context:

> To determine the status of [a judgment lien creditor's] . . . non-priority claim, we must look to 11 U.S.C. § 506(a). Through the inclusion of a § 506(a) analysis to define 'secured' and 'unsecured' in the § 109(e) context, a vast majority of courts, and all circuit courts that have considered the issue, have held that the unsecured portion of undersecured debt is counted as unsecured for § 109(e) eligibility purposes.

*Id.* at 983 (citing cases). The *Scovis* court reasoned:

> It is true that although § 506(a) speaks in terms of an "allowed claim," applying § 506(a) to § 109(e) is necessary

---

[3] At each three-year interval ending on April 1 of the year, Congress has provided for automatic adjustment of the dollar amounts in effect under § 109(e). 11 U.S.C. § 104(a). This adjustment reflects changes in the Consumer Price Index for All Urban Consumers published by the U.S. Department of Labor. *Id.* § 104(a)(1). The § 109(e) debt limits were adjusted on April 1, 2016, after the petition date in this case, so the debt limits effective before April 1, 2016 are applicable to this case. *See id.* § 104(c).

5

> to prevent "raising form over substance and manipulation of the debt limits" to achieve Chapter 13 eligibility. By merely looking at the value of Debtors' residence, the first deed trust, and the judgment lien, it is clear that [a] judgment lien is undersecured to a significant extent. The listed value of Debtors' residence is $325,000. After considering the $249,026.91 first deed trust, only $75,973.09 remains as possible equity to which liens could attach. Since [the] judgment lien is for $208,000, at least $132,026.91 of the judgment lien is undersecured. There is no question that this undersecured debt is to be counted as unsecured for eligibility purposes.

*Id.* at 983 (citation omitted). The *Scovis* court adopted a "principle of certainty" in the § 109(e) context for determining whether a secured claim is treated entirely as unsecured or whether a secured claim should properly include an undersecured portion that counts as unsecured debt. *Id.* at 984 (finding that the "principle of certainty" applied with equal force in the context of deciding a homestead exemption's effect on the status of a debt as secured or unsecured). Secured debt should be treated as unsecured for eligibility purposes only if the court has a sufficient degree of certainty to treat all or part of the debt in this way. *See id.*; *accord In re Smith*, 435 B.R. 637, 647 (B.A.P. 9th Cir. 2010) ("In the context before us, the 'principle of certainty' applies where the effect of the value of the property on the status of Appellants' debts as secured or unsecured is readily ascertainable.").

B.   **Analysis**

In analyzing eligibility under § 109(e), the Ninth Circuit's *Scovis* decision adhered to a "principle of certainty" when applying § 506(a) to reclassify a secured claim as unsecured. Secured debt on the schedules should be treated as unsecured or undersecured only if

6

the court has a "sufficient degree of certainty" to treat that debt as unsecured or undersecured.

In *Scovis*, the Ninth Circuit found that the schedules provided all the information necessary to conclude with certainty that the judgment lien was undersecured and also unsecured. All factual details provided in the schedules in that case permitted a strong inference of the lien's unsecured status: the value of the property, the first deed of trust, the judgment lien, and a $100,000 homestead exemption. *In re Scovis*, 249 F.3d at 982-84.

The schedules in this case do not provide the same level of certainty that was provided by the schedules in *Scovis*. The court does not have sufficient certainty from the debtors' original schedules to infer that several of the Secured Claims should be classified as undersecured for purposes of eligibility. The reason is that the automobile claims are scheduled in a way that indicates the potential application of the hanging paragraph of § 1325(a) to such claims. The hanging paragraph, moreover, precludes application of § 506(a) to bifurcate the claim into secured and undersecured portions.[4] The court would not ordinarily have certainty about whether to apply § 506(a) to an automobile claim because Schedule D does not request all information relating to § 1325(a)'s hanging paragraph.

---

[4] Section 1325(a)'s hanging paragraph precludes application of § 506(a) to bifurcate automobile claims when several elements are present. A lien secured by a motor vehicle cannot be stripped down to the collateral's value if: (1) the lien securing the claim is a purchase money security interest, (2) the debt was incurred within the 910-day period preceding the date of the petition, and (3) the motor vehicle was acquired for the debtor's personal use. 11 U.S.C. § 1325(a) (hanging paragraph).

On Line 2.6, the debtors scheduled BMW Financial Services' claim for $69,200, which is secured by the 2014 BMW. The value of the collateral is $47,575.00. Schedule D indicates that the collateral is "owned by TCJJ." This notation permits an inference that the claim may be co-owned by the debtors (or that the loan secured by this vehicle may have been guaranteed by the debtors). Another box was checked affirming that the debtors owe the debt. The debt was incurred on July 1, 2014, which is within the 910-day period of § 1325(a)'s hanging paragraph.[5] The collateral is a motor vehicle. *See* 11 U.S.C. § 1325(a) (hanging paragraph). But it remains unclear from the schedules whether the security interest is a purchase money security interest or whether it is some other form of agreement. And even though the debtors own several businesses, as admitted on the SOFA, the vehicle is a 2014 BMW, a car that tends to be used for luxury and personal purposes rather than business purposes. Section 1325(a)'s hanging paragraph may or may not apply and preclude application of § 506(a). From the facts given on the schedules as originally filed, the court does not have a degree of certainty sufficient to determine whether § 506(a) may be applied to reclassify the undersecured portion of this claim as unsecured debt.

On Line 2.8, the debtors scheduled the claim held by EECU for $34,251.68, which is secured by the Ford F-150. The value of the collateral is listed as $18,261.00. The debt was incurred on July 7,

---

[5] If the schedules showed that this debt was incurred on a date outside the 910-day period of § 1325(a)'s hanging paragraph, then the court could conclude with certainty, from the facts in the schedules, that the claim should be bifurcated under § 506(a).

8

2015, which is within the 910-day period specified in § 1325(a)'s hanging paragraph. The collateral for the debt is plainly a motor vehicle. Both debtors state that they owe the debt. But the schedules do not permit certainty regarding whether the creditor holds a purchase money security interest, although the lien is indicated to be consensual (based on agreement). Although this vehicle could be used for business purposes (and therefore subject to lien stripping), it could also be used for the personal use of the debtor. Section 1325(a)'s hanging paragraph may or may not apply and preclude application of § 506(a). From the facts given on the schedules as originally filed, the court does not have a degree of certainty sufficient to determine whether § 506(a) applies to reclassify the undersecured portion of this claim as unsecured debt.

On Line 2.15, the debtors scheduled a claim held by TD Auto Finance LLC for $36,124. This claim is secured by the 2015 BMW. Schedule D affirms that this claim is secured by a purchase money security interest in the collateral. The collateral for this debt is plainly a motor vehicle. The debt was incurred on October 31, 2014, which is within the 910-day period of § 1325(a)'s hanging paragraph. The type of vehicle is inconsistent with a business use and more consistent with a personal use. As a result, the court does not have a sufficient degree of certainty to conclude that § 506(a) applies because § 1325(a) may preclude application of § 506(a).

The court need not analyze or address the Serta claim in the amount of $57,018.76 secured by inventory, as described on Line 2.14. The value of the collateral for the Serta claim is $23,000. If this

9

claim were bifurcated into secured and unsecured portions, the unsecured portion would be $34,018.76. But even if the unsecured portion of the Serta claim were added to $332,707 of unsecured claims on Schedule E/F, the debtors would be below the eligibility limit applicable in March 2016, which was $383,175.00. This claim does not affect the outcome in this matter.

In short, the court has reviewed the debtors' originally filed schedules, checking only to see if the schedules were filed in good faith. No evidence of lack of good faith has been offered, so the court does not look beyond the originally filed schedules. The court lacks the requisite degree of certainty to infer that portions of the three secured automobile claims may be counted as unsecured for § 109(e) eligibility purposes. The schedules permit an inference that § 506(a) may not be applicable to allow bifurcation of the automobile claims into secured and unsecured components. They raise the possibility that § 1325(a)'s hanging paragraph could preclude such bifurcation.

As a result, the debtors' unsecured debt remains below the $383,175 debt limit applicable on the petition date. The court finds that the debtors qualify for chapter 13 relief under § 109(e).

**IV.    CONCLUSION**

The debtors' unsecured debt is below the $383,175 debt limit applicable on the petition date. The court finds that the debtors are eligible for chapter 13 relief. Accordingly, the motion will be denied. The court will issue a separate order.

Dated: February 15, 2017

Fredrick E. Clement
United States Bankruptcy Judge